IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 11-cv-00103-WJM-BNB

DENNIS W. KING, Colorado resident and U.S. Bankruptcy Trustee for bankrupt SHERI L. LAUK, a Colorado resident,

Plaintiff,

v.

ALLSTATE INSURANCE COMPANY, a foreign corporation,

Defendant.

_____

## ORDER

_____

This matter arises on the following:

(1)     Plaintiff's **Motion for Protective Order** [Doc. # 35, filed 6/13/2011] (the "First Motion for Protective Order"); and

(2)     **Plaintiff's Second Motion for Protective Order** [Doc. # 40, filed 6/16/2011] (the "Second Motion for Protective Order").

## 1. Background

This is an insurance coverage case arising out of an underlying personal injury suit.

On August 24, 2008, Sheri Lauk was involved in an auto accident when she drove into the rear of Scott Martin's SUV at a speed exceeding 60 miles per hour. Mr. Martin was injured and brought the underlying suit against Ms. Lauk. Ms. Lauk was insured by Allstate, with policy limits of $100,000. Allstate provided its insured with a defense in the underlying suit.

Martin was represented in the underlying suit by Richard Kaudy and Richard Friedman. On September 4, 2008, Mr. Kaudy made a policy limits demand on Allstate, which expired in

October 2008.  Allstate eventually offered the policy limits on May 21, 2009, but Mr. Martin did

not accept the offer.  The underlying suit proceeded to trial, and the jury awarded Mr. Martin

damages in the amount of $3,087,500.

Ms. Lauk subsequently filed for bankruptcy, and the plaintiff here, Dennis W. King, is

the Bankruptcy Trustee asserting Ms. Lauk's rights.  The claim here is that Allstate failed to

accept or make a policy limits offer in a timely fashion, resulting in an excess verdict to the

detriment of its insured.

The Bankruptcy Trustee (asserting Ms. Lauk's rights) is represented by Mr. Friedman,

one of the Mr. Martin's lawyers in the underlying action.

## 2.  The First Motion for Protective Order

By way of the First Motion for Protective Order, the Bankruptcy Trustee seeks an order

as follows:

> [T]hat the following topics are beyond the permissible scope of
> discovery:
>
> 1.  Communications between the Martins and their counsel in the
> underlying action;
>
> 2.  The work-product of the counsel for King in this matter;
>
> 3.  The work-product of the Martins' counsel in the underlying
> action;
>
> 4.  Any discovery directed at undermining or impugning the jury
> verdict and judgment in Martin v. Lauk;
>
> 5.  Any discovery directed at Scott Martin's medical condition;
>
> 6.  Any discovery directed at Scott Martin's economic losses;
>
> 7.  Any discovery directed at Scott Martin's damages;

> 8. Any discovery directed at the motive of the Martins' counsel in making a settlement offer to Allstate; and
>
> 9. Any discovery directed at the *bona fide* nature of any settlement offer made by counsel for the Martins to Allstate.

First Motion for Protective Order [Doc. # 35] at p. 11.

The Bankruptcy Trustee asserts that discovery in these areas is not relevant to the parties' claims and defenses and not reasonably calculated to lead to the discovery of admissible evidence. Although the First Motion for Protective Order describes some of the requested information in terms of attorney-client communications and work product, privilege is not asserted as a basis for protection.

It is exceedingly difficult, and generally imprudent, to attempt to make sweeping discovery orders like those sought here. The better approach is to tie a specific ruling to a particular discovery request. Fortunately, the Bankruptcy Trustee has identified the following requests as seeking improper discovery: Interrogatories 7, 8, 10, 11, and 12; and Production Requests 1, 2, 3, 4, 6, 8, 9, 10, 11, and 12.

In general, Allstate may not relitigate here the underlying action. See Dale v. Guaranty Nat'l Ins. Co., 948 P.2d 545, 550 (Colo. 1997)(setting out the elements of issue preclusion). Ms. Lauk's liability for Mr. Martin's damages and the amount of Mr. Martin's damages are established by the underlying verdict. Nor is the bona fides of Mr. Martin's policy limits offer in September 2008 an element of the tort of unreasonable breach of the insurance contract, although evidence of the "contents of the offer, its form, and any defects which affected the ability to accept it" is relevant. Miller v. Byrne, 916 P.2d 566, 575 (Colo. App. 1995).

An insurer's decision to pay benefits must be evaluated based on the information before

the insurer at the time of that decision.  <u>Peiffer v. State Farm Mutual Automobile Ins. Co.</u>, 940

P.2d 967, 970 (Colo. App. 1996).  The insurer may not fail to investigate and evaluate the case,

however.  As the Colorado appellate court stated in <u>Aetna Casualty and Surety Co. v. Kornbluth</u>,

471 P.2d 609, 611 (Colo. App. 1970), the right of an insurance company to direct the defense of

the action against its insured and negotiate a settlement

> necessarily imposes a correlative duty on the part of the insurance
> company to ascertain all facts upon which a decision to settle or to
> compromise a given claim against its insured. . . .  The duty . . .
> requires, not only the full ascertainment of facts upon which to
> base a judgment and the making of a judgment, but there must be a
> willingness within the policy limit, to spend money in purchasing
> immunity for the insured, and due care must be exercised in
> ascertaining the facts, learning the law, and appraising the danger
> to the insured. . . .  We, therefore, rule that the decision on the part
> of an insurer relative to the question of settlement must be
> preceded by the exercise of that degree of care and diligence which
> a reasonably prudent person would use under the same or similar
> circumstances.

Finally, in <u>Bernhard v. Farmers Ins. Exchange</u>, 885 P.2d 265, 270 (Colo. App. 1994), the

court held:

> No personal injury plaintiff is ever under a duty to a defendant to
> accept a tender of the full limits of a liability policy covering the
> loss, and such a plaintiff may, in any case, elect to proceed to trial
> of the claim.  If such a plaintiff elects to proceed to trial after a
> timely and proper offer is made, the defendant's liability carrier
> will not be responsible for any resulting injury to its insured.  If,
> however, the carrier unreasonably delays in making such offer,
> under circumstances that demonstrate that such an offer would be
> appropriate, and a later full limits offer is refused, the carrier may
> be held responsible if plaintiff's refusal of the offer can reasonably
> be looked upon as a natural and probable consequence of the
> carrier's earlier unreasonable actions.

With these principles in mind, I look now to the specific discovery requests in dispute.

**Interrogatory 7:** The Motion for Protective Order is DENIED with respect to

4

Interrogatory 7 which, in general, seeks the identity of everyone with whom the Bankruptcy Trustee has spoken about the claims asserted and the content of those communications.  For example, discussions between the Bankruptcy Trustee and Mr. Martin about when Mr. Martin determined he was no longer willing to accept a policy limits offer certainly are relevant to the claims and defenses asserted here, as are discussions about whether Mr. Kaudy intentionally withheld information requested through discovery, whether Mr. Martin provided false information to Allstate, and what the responsible Allstate adjustor did to independently investigate Allstate's and  Ms. Lauk's potential exposure.

**Interrogatory 8:** The Motion for Protective Order is DENIED with respect to Interrogatory 8 which seeks information about the Bankruptcy Trustee's communications with Ms. Lauk or her family members.  Such discussions are relevant to the claims and defenses asserted here, or may lead to the discovery of admissible evidence.  For example, whether Ms. Lauk urged Allstate to investigate matters and whether Allstate investigated those matters is relevant to Allstate's compliance with its correlative duty to investigate.

**Interrogatories 10 and 11 and Production Request 10:** The Motion for Protective Order is DENIED with respect to Interrogatories 10 and 11 and Production Request 10 which require the Bankruptcy Trustee to identify all written and oral communications and documents exchanged between Mr. Martin, on the one hand, and Patricia Pacey or Margot Burns, on the other hand; identify people contacted "to determine the amount of Scott Martin's economic damages"; and produce the documents provided to Pacey and Burns in the underlying case. Pacey was disclosed as Mr. Martin's testifying economist in the underlying case and Burns was disclosed as his testifying vocational rehabilitation expert.  The requested information is relevant

to the issue of when Mr. Martin had reasonably calculated that his injuries equaled or exceeded $100,000; whether he was willing to accept a policy limits from Allstate; and when he decided that he would not accept such an offer.

**Interrogatory 12 and Production Request 11:** The Motion for Protective Order is DENIED with respect to Interrogatory 12 and Production Request 11 which seek the identity of "each medical provider who saw, treated, or diagnosed Scott Martin from August 24, 2008 to October 30, 2009"; requires disclosure of who paid each provider; and requires production of documents received from or transmitted to the people identified in the response to Interrogatory 12. The information is relevant to many issues, including when Mr. Martin learned of the extent of his physical injuries; the amount of medical bills as they were incurred and paid; and whether Mr. Martin withheld medical bills from Allstate to prevent it from assessing the extent of his injuries. All of this is relevant to whether Mr. Martin would have accepted a policy limits offer and when he decided that he would not accept such an offer.

**Production Request 1:** The Motion for Protective Order is DENIED with respect to Production Request 1. The documents identified by the Bankruptcy Trustee in responding to Allstate's interrogatories are relevant to the claims and defenses in the case.

**Production Requests 2, 3, 4, 6, 8, and 9:** The Motion for Protective Order is DENIED with respect to Production Requests 2, 3, 4, 6, 8, and 9. The requested documents concern, generally, communications about the underlying case; communications between the Bankruptcy Trustee and the major participants in the underlying case, including Mr. Martin's lawyers and Ms. Lauk; documents created in connection with the underlying case; documents concerning offers to settle in the underlying case; and documents concerning Mr. Martin's brain injury.

These documents are relevant, at least, to the issues of when Mr. Martin was reasonably able to calculate his damages; whether documents were withheld from Allstate; and when Mr. Martin determined that he would not accept a policy limits offer.

**Production Request 12:** Production Request 12 commands the production of "all documents constituting, comprising, summarizing, referring to, or mentioning anyone's request for charity, discounts, write-offs, price reductions, or any other type of financial assistance from Scott Martin's medical providers." The Bankruptcy Trustee has failed to explain how these materials are relevant to any claim or defense, and I cannot discern the relevance. The Motion for Protective Order is GRANTED with respect to Production Request 12, and that discovery shall not be had.

### 3. The Second Motion for Protective Order

Allstate has subpoenaed the files of Pacey and Burns, testifying experts in the underlying case. Burns has produced her file; Pacey has not. The Bankruptcy Trustee seeks (1) to quash the subpoenas; (2) an order that discovery of Burns' file not be had; and (3) an order that Allstate destroy or return Pacey's file. The Bankruptcy Trustee argues that the files are not discoverable because they are not relevant or reasonably calculated to lead to the discovery of admissible evidence in this action because "documents that were not known to Allstate at the time it was called upon to make decisions with respect to its insured Ms. Lauk, are not relevant in this action. . . ." Second Motion for Protective Order [Doc. # 40] at p. 3. In addition, the Bankruptcy Trustee attempts to invoke alleged privacy interests of Mr. Martin, arguing that Mr. Martin "is <u>not</u> a party, has not provided any medical authorizations to any party, and asserts through his counsel Richard M. Kaudy, that he does not wish to waive his privilege in this matter," and that

Mr. Martin's "tax returns enjoy a qualified immunity based on a right to privacy. . . ." Id. at p. 4. Apparently, Mr. Martin's medical records and tax returns are among the materials in Pacey and Burns' files and would be disclosed under the command of the subpoenas.

The Second Motion for Protective Order is DENIED.

First, the experts' files are relevant to the claims and defenses in this action. They go, at a minimum, to the issues of when Mr. Martin had reasonably calculated that his injuries equaled or exceeded $100,000; whether he was willing to accept a policy limits from Allstate; and when he decided that he would not accept such an offer.

Second, I do not agree that Mr. Martin (or the Bankruptcy Trustee on his behalf) may invoke a physician-patient privilege with respect to his medical records. That privilege was impliedly waived when he filed a suit against Ms. Laud putting at issue the injuries he sustained in the underlying suit. Any privilege was also waived when he disclosed his medical records to testifying experts.

Nor may Mr. Martin (or the Bankruptcy Trustee on his behalf) prevent discovery of tax records reviewed in connection with expert reports prepared in the underlying suit. Any privacy right was waived. In addition, under Martinelli v. District Court, 612 P.2d 1083 (Colo. 1980), the Colorado Supreme Court recognized a constitutional right to privacy in personnel files. The court termed this a "right to confidentiality" and said that it "encompasses the power to control what we shall reveal about our intimate selves, to whom, and for what purpose." Id. at 1091 (internal quotation and citation omitted). The right to confidentiality is not absolute, however, and is subject to the following "tripartite balancing inquiry":

> (1) does the party seeking to come within the protection of right to
> confidentiality have a legitimate expectation that the materials or

information will not be disclosed?

(2) is disclosure nonetheless required to serve a compelling state interest?

(3) if so, will the necessary disclosure occur in that manner which is least intrusive with respect to the right to confidentiality?

Id.

By disclosing his tax records to testifying experts in litigation for their review in connection with forming opinions, Mr. Martin gave up any reasonable expectation of confidentiality in the information.  See Gall v. Jamison, 44 P.3d 233, 239 (Colo. 2002)(holding that there is a "bright-line rule in favor of production of *any information* which the expert considers").  Disclosure of the records is required to serve the compelling state interest of the ascertainment of the truth in litigation.  Denver Policemen's Protective Ass'n v. Lichtenstein, 660 F.2d 432, 436 (10th Cir. 1981).  And production of the documents under the Protective Order [Doc. # 31] previously entered in this case to limit the disclosure of confidential information can assure that the disclosure is accomplished in the least intrusive manner possible.

IT IS ORDERED:

(1)     The First Motion for Protective Order [Doc. # 35] is GRANTED IN PART and DENIED IN PART as follows:

• GRANTED with respect to Production Request 12; and

• DENIED in all other respects.

(2)     The Second Motion for Protective Order [Doc. # 40] is DENIED.

(3)     The Bankruptcy Trustee shall respond to Allstate's written discovery consistent with this Order on or before **August 18, 2011**.

(4)     Margot Burns shall comply with the demands of the subpoena served on her at a date and time as she and the parties may agree, but in no event later than **August 18, 2011**.

Dated August 4, 2011.

BY THE COURT:

 s/ Boyd N. Boland
United States Magistrate Judge