**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 11-cv-00103-WJM-BNB

DENNIS W. KING, Colorado resident and U.S. Bankruptcy Trustee for bankrupt SHERI L. LAUK, a Colorado resident,

    Plaintiff,

v.

ALLSTATE INSURANCE COMPANY, a foreign corporation,

    Defendant.

---

**ORDER ON MOTIONS CHALLENGING EXPERT TESTIMONY**

---

This bad faith insurance dispute is set for a nine-day jury trial commencing on August 26, 2013. In anticipation of trial, the parties have filed a number of motions challenging the admissibility of the opposing party's proposed expert testimony. The following motions are currently before the Court: (1) Defendant's Motion to Exclude Testimony from Stephen D. Prater under Federal Rule of Evidence 702 (ECF No. 167); (2) Plaintiff's Rule 702 Motion re: William J. Kirven, III (ECF No. 185); (3) Plaintiff's Rule 702 Motion re: Dr. Richard Smith (ECF No. 186); (4) Plaintiff's Rule 702 Motion re: David Viano (ECF No. 187); and (5) Plaintiff's Rule 702 Motion re: Michael Zeeb (ECF No. 188).

For the reasons set forth below, Plaintiff's Motions are granted to the extent they seek exclusion of testimony from Dr. Smith, Dr. Viano, and Michael Zeeb. Plaintiff's Motion to limit William J. Kirven's testimony is granted in part and denied in part. Defendant's Motion to exclude Stephen Prater's testimony is denied.

## I. LEGAL STANDARD

A district court must act as a "gatekeeper" in admitting or excluding expert testimony. *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1232 (10th Cir. 2004). Admission of expert testimony is governed by Rule 702, which provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. Ultimately, the Court must determine whether the expert's opinion would assist the trier of fact in understanding or determining a fact at issue in the case. *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579, 592 (1993). The Court must also weigh the relevance of any proposed expert testimony against "the danger of unfair prejudice, confusion of the issues, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403.

The proponent of the expert testimony bears the burden of proving the foundational requirements of Rule 702 by a preponderance of the evidence. *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009).

## II. ANALYSIS

Each of the pending Rule 702 motions will be addressed in turn below.

**A. Motions regarding Dr. Smith, Dr. Viano, and Michael Zeeb**

Plaintiff moves to strike the testimony of expert witnesses Dr. David Viano, Dr.

Richard Smith, and Michael Zeeb. (ECF Nos. 186-88.) Dr. Viano is Defendant's expert in the fields of biomechanics and field accident data analysis who will testify that "the facts considered and relied upon by Allstate adjuster Karla Cosgrove in assessing the severity of the accident and in assessing the likelihood of serious injury to Mr. Martin, were relevant and that her[] assessment was reasonable based on the science of biomechanics." (ECF No. 152 at 25.) Dr. Smith is a neurologist who will testify in support of Defendant's contention that "Ms. Cosgrove understood and properly assessed the medical information she received, and that her assessment of Mr. Martin's condition, as well as the timing of her conclusions regarding Mr. Martin's condition, was reasonable" from a medical perspective. (*Id*. at 26.) Mr. Zeeb is a Certified Public Accountant who Defendant proposes to call to testify, among other things, that "Allstate and Karla Cosgrove made a reasonable analysis, and drew correct conclusions, regarding the economic and financial data they received from Mr. Kaudy." (*Id*. at 29.)

Plaintiff raises the same objections to each of these witnesses' testimony. Plaintiff first argues that their testimony is not relevant because it did not influence Defendant's handling of the Martins' claim at anytime prior to the policy limit offer on May 21, 2009. (ECF No. 186 at 5.) Plaintiff also contends that these experts are "stepping beyond [their] area of expertise" when they offer opinions about whether Allstate and Ms. Kosgrove's actions were reasonable. (*Id.*)

At the heart of this dispute is a relatively simple question, *i.e.,* whether the manner in which Allstate handled the Martins' claim between the date of the accident and its policy limits offer on May 21, 2009 was reasonable, or whether it constituted bad

faith. To establish that an insurance company acted in bad faith, "the insured must show that a reasonable insurer under the circumstances would have paid or otherwise settled the third-party claim." *Goodson v. Am. Standard Ins. Co.*, 89 P.3d 409, 415 (Colo. 2004). The reasonableness of an insurer's conduct is "determined objectively, based on proof of industry standards." *Id*. Thus, the jury in this case will be tasked with deciding whether Allstate's actions were reasonable based on standards that govern the insurance industry.

Defendant purports to offer Dr. Viano's testimony to show that Defendant's actions were reasonable from the perspective of a medical professional with training in the fields of biomechanics and accident investigation. (ECF No. 194 at 2.) Plaintiff argues that this opinion is inadmissible because the jury must compare Defendant's actions to a reasonable insurer, not a reasonable medical professional. (ECF No. 187 at 4.) The Court agrees. The jury's reasonableness determination must be based on the standards that govern the insurance industry, not the standards applicable to experts in biomechanics and/or accident investigations. Therefore, Dr. Viano's opinion that Defendant's actions were reasonable under principles of biomechanics and accident investigation are irrelevant, and would be confusing to the jury. *See Gust v. Jones*, 162 F.3d 587, 593 (10th Cir. 1998) (expert testimony which did not opine on the relevant standard of care is irrelevant to any issue before the court).

To the extent Defendant is seeking to offer Dr. Viano's testimony as relevant to whether Defendant acted as a reasonable insurer, he is not qualified to offer such an opinion. There is no evidence that Dr. Viano has any experience as an insurance adjuster or in any other capacity within the insurance industry. Accordingly, any opinion

offered by Dr. Viano as to the reasonableness of Defendant's actions in comparison to other insurers or the standards that govern the insurance industry would be unreliable and therefore inadmissible.  *See Milne v. USA Cycling Inc.*, 575 F.3d 1120, 1134 (10th Cir. 2009) (where expert was not qualified to offer opinions on the standard of care for mountain bike races, the district court did not err by excluding his testimony as unreliable).

The analysis set forth above applies equally to the proposed testimony of Dr. Smith and Michael Zeeb.  Defendant states that it intends to offer Dr. Smith's testimony to show that its "analysis of Mr. Martin's medical condition was reasonable from the standpoint of a neurologist and medical doctor." (ECF No. 193 at 2.)  Mr. Zeeb's testimony is intended to show that Defendant's understanding of Mr. Martin's damages was reasonable from the perspective of a certified public accountant. (ECF No. 195 at 2.)  Neither Dr. Smith nor Mr. Zeeb are qualified to offer opinions that are relevant to the issue at the heart of this case—whether Defendant's actions comported with those of a reasonable insurer based on industry standards.

Because Dr. Viano, Dr. Smith and Mr. Zeeb are not qualified to offer opinions about how a reasonable insurer would have handled the Martins' claim or the standards that govern the insurance industry, the Court finds that their testimony would not assist the jury in this case.  Instead, the Court finds that allowing these witnesses to offer their opinions about reasonableness from the perspective of each witness's experience and specialized training in his particular field would likely confuse the issues and mislead the jury as to what standard should govern its reasonableness determination.  The Court therefore concludes that the testimony from Dr. Viano, Dr. Smith, and Mr. Zeeb is

inadmissible to the extent it is offered to show that Defendant's actions were reasonable. See Fed. R. Evid. 403.

In addition to offering these expert opinions for the purpose of assisting the jury's reasonableness determination, Defendant appears to offer at least some portion of this testimony to dispute the amount of damages suffered by Mr. Martin. For example, Defendant contends that the jury needs Mr. Zeeb's testimony to understand the fundamentals of determining economic damages for a self-employed claimant such as Mr. Martin. (ECF No. 195 at 2.) This argument is unpersuasive because the jury in this case will not be tasked with determining Mr. Martin's damages. As the Court has already ruled, Defendant's opportunity to challenge the valuation of Mr. Martin's injuries was in the case between the Martins and Sheri Lauk. The Court has previously held that the jury's verdict in that case is dispositive of Mr. Martin's damages for purposes of this action, and that Defendant will not be permitted to re-litigate such issues. (ECF No. 158 at 10 ("The jury's finding in the Underlying Action on the amount of damages that the Martins suffered will govern that issue in this case.")) Thus, the Court finds that any expert opinions intended to dispute or explain the valuation of Mr. Martin's damages would be irrelevant, a waste of time, and may confuse the issues or mislead the jury.

Accordingly, the Court finds that the opinions of Dr. Viano, Dr. Smith, and Mr. Zeeb are irrelevant to the issues at the heart of this case. Moreover, to the extent that any of these witnesses' opinions could be deemed relevant, any minimal relevance is substantially outweighed by the danger of unfair prejudice to Plaintiff, confusion of the issues, waste of time, and misleading the jury. Thus, pursuant to Federal Rules of Evidence 401, 402, and 403, the Court finds that the opinions of Dr. Viano, Dr. Smith,

and Michael Zeeb are inadmissible. Plaintiff's Motions to Strike these witnesses are granted.

**B.     Motion regarding William J. Kirven**

Defendant intends to call William J. Kirven as an expert witness on the insurance industry. (ECF No. 152 at 28-29.) Plaintiff does not challenge Mr. Kirven's qualifications and acknowledges that "much of what Mr. Kirven . . . says is proper and admissible testimony." (ECF No. 185 at 5.) However, Plaintiff alleges that certain opinions are outside of his expertise, or will inappropriately instruct the jury on the law or venture into policy issues. (*Id.*)

Because an expert's testimony at trial rarely mirrors the precise wording, structure or organization of his expert report, the Court will set forth broad guidelines that will govern Mr. Kirven's testimony rather than parse Mr. Kirven's expert report line-by-line. With regard to the majority of the arguments raised by Plaintiff, the Court finds that these issues are best addressed via vigorous cross-examination rather than having the Court exclude this testimony. For example, Plaintiff contends that Mr. Kirven's opinions about loss reserves ignore Defendant's internal policies and are therefore based on insufficient or incomplete facts. (ECF No. 185 at 8.) The Court finds that this line of argument is perfectly suited for cross-examination, as it goes to the weight the jury should afford the testimony, not to its admissibility. The same is true with regard to Plaintiff's argument that Mr. Kirven's opinions on Mr. Kaudy's intent are improper. Counsel is free to question Mr. Kirven as to his basis for opining about Mr. Kaudy's intent and then to attack any proffered basis. However, Mr. Kirven will be permitted to offer his opinion about why Mr. Kaudy took certain actions in the underlying litigation.

7

Plaintiff also challenges Mr. Kirven's opinions regarding general trends in insurance bad faith litigation, specifically the practice of manufacturing a bad faith claim when the insured is judgment proof. (ECF No. 185 at 9-13.) The Court notes that, as the former insurance commissioner, Mr. Kirven undoubtedly follows trends in the insurance industry and this subject is certainly within his expertise. Despite this, the Court will not permit Mr. Kirven to testify about what is generally occurring in the industry. Mr. Kirven's testimony must be focused on the actions or inactions that occurred in this case, and the Court will only permit testimony about persons and events involved in this case. Generalized statements regarding trends in the insurance industry will not be permitted.

The Court will also not permit Mr. Kirven to offer testimony about public policy and the policy considerations underlying decisions made within the insurance industry, unless such testimony is tethered to the facts of this case. For example, Mr. Kirven may testify about the policy implications of a particular action that occurred in this case—such as the alleged delay in providing sufficient documentation to permit Defendant to make an assessment of the amount of lost income—and why the industry must encourage or discourage any conduct that occurred here. However, the Court will not permit Mr. Kirven to testify about general public policy implications of insurance bad faith claims.

Plaintiff also challenges Mr. Kirven's opinions to the extent that they go to the ultimate issue of the case—whether Defendant acted in bad faith. (ECF No. 185 at 9.) It is well-settled that an expert opinion is not inadmissible simply because it embraces an ultimate issue to be determined by the trier of fact. *Phillips v. Calhoun*, 956 F.2d

949, 952 (10th Cir. 1992) ("While an expert may not state legal conclusions, Fed. R. Evid. 704(a) allows an expert witness to testify in the form of an opinion or inference even if that opinion or inference embraces an ultimate issue to be determined by the trier of fact."); Fed. R. Evid. 704(a) (an expert's opinion is not "objectionable just because it embraces an ultimate issue."). Moreover, expert witnesses are permitted to offer opinions regarding the law and the interplay of the law and the facts. As such, the Court will not preclude Mr. Kirven's testimony that, in his opinion and based on his experience, certain actions taken by Defendant were reasonable and/or show that Defendant did not act in bad faith.

Finally, Plaintiff challenges Mr. Kirven's opinions to the extent they provide commentary on the law that governs this case. (ECF No. 185 at 9-10.) The Court notes that Mr. Kirven's expert report contains detailed analysis of many bad faith cases in the Colorado state courts and *Wade v. EMCASCO Insurance Company*, 483 F.3d 657 (10th Cir. 2007). (ECF No. 185-8 at 6-10.) As it is the Court's role to instruct the jury on the law governing this case, the Court will not permit Mr. Kirven to testify about the meaning of any of these cases. Of course, the standards that govern the insurance industry are, at least to some extent, formed by this case law. Case law also serves to interpret the governing statutes. As such, to the extent that Mr. Kirven has studied these cases, they may inform his opinions. However, the Court sees a difference between, on the one hand, Mr. Kirven testifying about the holding in a particular case and applying the rule of that case to the facts at issue here and, on the other hand, Mr. Kirven testifying about his understanding of the law and how it impacts his understanding of the standards that govern the insurance industry. The Court will

permit testimony which resembles the latter; the former is impermissible. Given the close intersection between portions of Mr. Kirven's testimony and the Court's role in instructing the jury, however, the Court will give a limiting instruction prior to Mr. Kirven's testimony at trial. Such instruction will make clear that the Court will instruct the jury on the law and, to the extent that Mr. Kirven's testimony differs from the Court's instructions, the jury must credit the Court's instructions over such testimony. The instruction will also inform the jurors that they may give Mr. Kirven's testimony whatever weight they deem appropriate, and that they are the ultimate finders of fact in this case. The parties should work together to attempt to stipulate to a proposed limiting instruction and should include such stipulated instruction in their set of instructions. To the extent that the parties are not able to reach a stipulation, the Court will accept competing proposed limiting instructions.

Given the confines set forth above, Plaintiff's 702 Motion re: William J. Kirven is granted in part and denied in part.

**C.     Defendant's Motion Regarding Stephen Prater**

Defendant moves to exclude all testimony from Plaintiff's expert on bad faith, Stephen Prater. (ECF No. 167.) In the alternative, Defendant moves to preclude certain opinions contained in Mr. Prater's expert report and/or his supplemental affidavit in support of Plaintiff's opposition to summary judgment. (*Id.*) The Court will address each of these arguments in turn below.

1.     <u>Mr. Prater's Overall Qualifications</u>

Defendant contends that Mr. Prater is not qualified to offer expert opinions in this case because he is not an expert on Colorado's insurance industry standards. (ECF

No. 167 at 5.) Defendant points out that, despite essentially being a professional expert witness, Mr. Prater has testified in only one Colorado case. (*Id*. at 5-6.) Defendant contends that Mr. Prater has only limited familiarity with the regulations governing the Colorado insurance industry, and has no experience adjusting claims in Colorado. (*Id*. at 8-11.) Plaintiff does not dispute Mr. Prater's lack of experience with Colorado law and in the Colorado insurance industry. (ECF No. 177 at 3.) Plaintiff contends, however, that Mr. Prater's lack of specialized knowledge is immaterial because Defendant's claim handling policies are the same for Colorado as they are for other states in which Mr. Prater has significant experience. (*Id*.) The evidence supports Plaintiff's contention that Defendant applies the same claims handling policies to its claims in Colorado and elsewhere. (ECF Nos. 179-80.)

Thus, the only issue is whether Mr. Prater is required to have expertise specific to Colorado's insurance industry and the regulations governing the same, or whether generalized expertise of the insurance is industry is sufficient. The Court finds that the cases cited by Defendant for the theory that generalized expertise is insufficient are distinguishable. For example, while it is certainly true that training as a physician does not qualify an individual to testify about the propriety of any and all medical procedures, *see Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 969-70 (10th Cir. 2001), that is not the case here. Mr. Prater is an expert in claims handling procedures, which is the precise subject matter that he will testify about in this case.

Defendant also cites *City of Hobbs v. Hartford Fire Insurance Company*, 162 F.3d 576, 586-87 (10th Cir. 1998), in support of its argument that state-specific expertise is required for an insurance bad faith expert. The Court acknowledges that, in

11

*Hobbs*, the Tenth Circuit held that the district court did not abuse its discretion because it precluded testimony from an expert that lacked training and experience in New Mexico insurance regulations. *Id*. at 586-87. The Court notes that the expert in that case lacked any training and experience in the handling of third party claims and that the same is not true for Mr. Prater. However, more significantly, the Tenth Circuit's ruling was only that the district court did not abuse its discretion by declining to admit the testimony. This holding does not mean that it would have been an abuse of discretion to admit the same testimony. Thus, *Hobbs* is distinguishable and does not compel a finding that Mr. Prater's testimony should be excluded altogether.

Despite Defendant's protestations to the contrary, the Court finds that there are numerous cases in which experts have been permitted to testify based on a more generalized notion of expertise. *See P.S. ex rel. Nelson v. The Farm, Inc.*, 658 F. Supp. 2d 1281, 1290 (D. Kan. 2009) (expert was qualified to offer opinions based on his experience with foster programs in general and his lack of experience in the particular jurisdiction does not preclude the testimony). The Tenth Circuit has held that as long as an expert stays "within the reasonable confines of his subject area", his lack of specialization affects the weight of the opinion and not its admissibility. *Ralston*, 275 F.3d at 970; *see also Compton v. Subaru of Am.*, 82 F.3d 1513, 1520 (10th Cir. 1996). In this case, there is no evidence showing that Colorado's regulations are materially different than states in which Mr. Prater has significant training and experience. There is also no evidence showing that the regulations governing the Colorado insurance industry are materially different from those states. Therefore, in this situation, the Court

finds that Mr. Prater's lack of training, qualifications, and experience with Colorado's insurance industry do not make him unqualified to serve as an expert in this case. Of course, Defendant is free to cross-examine Mr. Prater on his Colorado-specific experience, training, and qualifications and to argue to the jury that the lack thereof means that the jury should afford his opinions less weight than the expert opinions proffered by Defendant. However, the Court finds that Plaintiff has established that Mr. Prater's experience, training, and qualifications are sufficient to permit him to offer expert testimony in this case.

### 2. Opinions on Loss Reserves

Defendant also objects to the admission of Mr. Prater's opinions on loss reserves on the basis that they are inconsistent with Colorado law. (ECF No. 167 at 11-12.) Specifically, Defendant points to Mr. Prater's opinions that Defendant knew that the Martins' claims were worth at least $100,000, because Defendant set its loss reserve at $100,000 well before it made a policy limits offer. (ECF No. 167-2 at 8.)

Defendant correctly cites Colorado law which states that "reserves should not be equated with an admission or valuation by the insurer." (ECF No. 167 at 12 (citing *Silva v. Basin Western, Inc.*, 47 P.3d 1184, 1189 (Colo. 2002).) The Court has reviewed Mr. Prater's reports and finds that they are consistent with this legal principle. Mr. Prater does not opine that Defendant admitted the claim was worth $100,000 by setting the loss reserve at $100,000, or that Defendant actually valued the claim at $100,000 simply because that was its loss reserve. Rather, Mr. Prater states that the amount of loss reserve is evidence that Defendant knew that the Martins' claims could be worth the policy limits. (ECF No. 167-2 at 8.) The distinction may be subtle but it is significant

with regard to admissibility.

At trial, Defendant will have the opportunity to cross-examine Mr. Prater on his opinions regarding loss reserves, and will also be able to call its own expert witness(es) on the role loss reserves play in the insurance industry.  To the extent Defendant is concerned that Mr. Prater's opinions may confuse the jury regarding the state of the law in Colorado, as discussed above with regard to Mr. Kirven's testimony, Defendant is free to submit a proposed limiting instruction which the Court will read prior to Mr. Prater's testimony.  The Court will not, however, preclude Mr. Prater from offering his opinions about the role of loss reserves in the insurance industry.

    3.    <u>Attempts to Mediate</u>

Defendant challenges Mr. Prater's opinions regarding its attempts to mediate the underlying case.  (ECF No. 167 at 13.)  Defendant contends that Mr. Prater has no specialized knowledge or experience in litigation or mediation, and is therefore unqualified to offer any opinion.  (*Id.*)  The Court finds that Mr. Prater has sufficient experience in the insurance industry—where settlement and mediation play a central role—to opine about how and when an insurer should consider pursuing mediation.

Defendant also argues that Mr. Prater's opinions on mediation are patently false and show that he fundamentally misunderstands the role of mediation in attempting to settle a case.  (*Id.*)  Defendant cites one statement in Mr. Prater's Declaration submitted in support of Plaintiff's opposition to the Motion for Summary Judgment, in which Mr. Prater states: "Mediation is one potential forum for negotiating cases; however, the suggestion that a mediation be scheduled is not tantamount to settling or attempting to settle a case." (ECF No. 121-1 ¶ 25.)  Plaintiff contends that Defendant has taken this

statement out of context and that the remainder of Mr. Prater's opinions on mediation and Defendant's actions surrounding the mediation show that he has a firm grasp on the role mediation plays in settlement.  (ECF No. 177 at 11.)

The Court agrees with Plaintiff.  While Mr. Prater's Declaration was inartfully phrased, having read the statement in the context of Mr. Prater's overall opinions contained in both his Declaration and Expert Report, the Court has little doubt that Mr. Prater understands the role of mediation.  As Mr. Prater will be testifying live at trial, the Court doubts Mr. Prater will express his opinions exactly as they are written in his Declaration, and thus there is no need to exclude the challenged statement.

The Court finds that Mr. Prater's qualifications, training, and experience in the insurance industry are sufficient to support his proffered opinions.  The Court further finds that Mr. Prater's testimony will likely assist the jury, and any weaknesses in Mr. Prater's qualifications go to the weight the jury should afford his testimony rather than its admissibility and are best dealt with through cross-examination.  Accordingly, Defendant's Motion to Exclude Mr. Prater's testimony is denied.

### III.  CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. Defendant's Motion to Exclude Testimony from Stephen D. Prater (ECF No. 167) is DENIED;

2. Plaintiff's Rule 702 Motion re: William J. Kirven, III (ECF No. 185) is GRANTED IN PART and DENIED IN PART.  Mr. Kirven will be permitted to testify in accordance with the confines set forth above;

3. Plaintiff's Rule 702 Motion re: Dr. Richard Smith (ECF No. 186) is GRANTED;

4. Plaintiff's Rule 702 Motion re: David Viano (ECF No. 187) is GRANTED; and

5. Plaintiff's Rule 702 Motion re: Michael Zeeb (ECF No. 188) is GRANTED.

Dated this 31st day of July, 2013.

BY THE COURT:

William J. Martinez
United States District Judge