**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 11-cv-00103-WJM-BNB

DENNIS W. KING, Colorado resident and U.S. Bankruptcy Trustee for bankrupt SHERI L. LAUK, a Colorado resident,

    Plaintiff,

v.

ALLSTATE INSURANCE COMPANY, a foreign corporation,

    Defendant.

**ORDER DENYING DEFENDANT'S MOTION TO AMEND FINAL PRETRIAL ORDER AND DENYING AS MOOT PLAINTIFF'S MOTION TO STRIKE**

Before the Court are the following motions: (1) Plaintiff's Motion to Strike Defendant's 7/23/13 Fourteenth Supplemental Initial Disclosure (ECF No. 200); and (2) Defendant's Motion to Amend the Final Pretrial Order (ECF No. 236). For the reasons set forth below, Defendant's Motion is denied and Plaintiff's Motion is denied as moot.

**I. BACKGROUND**

This case arises out of an accident on August 24, 2008 in which Sherri Lauk's vehicle hit Scott Martin's vehicle. At the time of the accident, Sherri Lauk was insured by Defendant Allstate Insurance Company ("Allstate").

On September 4, 2008, through counsel Richard Kaudy, Scott Martin and his wife made a policy limit demand ($100,000) on Lauk's insurance policy with Allstate. Allstate rejected the offer. After receipt of additional evidence and further consideration of the claim file, Allstate made a policy limits offer to Martin on May 21, 2009. The

Martins rejected that offer.  Allstate provided a defense to Lauk and the case went to trial in October 2009.  During the trial, Mr. Martin testified that his life was impacted by the accident in a variety of ways, including the fact that he was no longer able to drive his children or participate in their sporting events.  The jury awarded the Martins $3,087,500.00 for their injuries arising from the accident.  (ECF No. 152.)

Lauk declared bankruptcy and her claim for economic damages against Allstate was assigned by her bankruptcy estate.  Dennis King, the trustee of Ms. Lauk's bankruptcy estate, filed this lawsuit, asserting that Allstate acted in bad faith in the manner in which it adjusted Sherri Lauk's insurance policy between the date of the accident (August 24, 2008) and the date of the policy limits offer (May 21, 2009).  (ECF No. 152.)  Discovery in this case closed on May 19, 2012.  (ECF No. 129.)

The Court has issued a number of substantive rulings thus far in this case.  However, the only ruling relevant to the instant Motions is the Order on the parties' Summary Judgment Motions.  The Court granted in part Plaintiff's Motion for Partial Summary Judgment and held: "The Court will not permit Allstate to relitigate the nature, cause, or extent of the Martins' injuries as that figure was determined by the jury in the Underlying Action." (ECF No. 158 at 11.)

Despite this ruling, in June 2013, Allstate hired Rob Garza to investigate Scott Martin.  (ECF No. 200-1.)  Mr. Garza followed Mr. Martin and observed Mr. Martin driving his vehicle for approximately thirty miles on June 22, 2013.  (*Id.*)  Mr. Garza then observed Mr. Martin assisting at a little league baseball game.  (*Id.*)

On July 22, 2013, Allstate made a Fourteenth Supplemental Rule 26(a)(1) Disclosure ("Disclosure") which, for the first time, identified Mr. Garza as an individual

likely to have discoverable information which Allstate may use to support its defenses. (ECF No. 200-1.)  The Disclosure also listed as relevant documents the surveillance video Mr. Garza obtained on June 22, 2013 and Mr. Garza's affidavit explaining his surveillance.  (*Id.*)

On July 25, 2013, Plaintiff filed a Motion to Strike the Disclosure.  (ECF No. 200.)  On August 13, 2013, Allstate moved to amend the Final Pretrial Order to include Mr. Garza as a potential witness and his surveillance video and affidavit as potential exhibits.  (ECF No. 236.)  These Motions are currently before the Court.  Because, as set forth below, the Court denies the Motion to Amend the Final Pretrial Order, it finds that the Motion to Strike is moot and will only address the Motion to Amend.

## II.  LEGAL STANDARD

Pursuant to Fed. R. Civ. P. 16(e), a Final Pretrial Order may only be modified "to to prevent manifest injustice."  *Davey v. Lockheed Martin Corp.*, 301 F.3d 1204, 1208-10 (10th Cir. 2002); *Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1222 (10th Cir. 2000).  The party moving for such modification bears the burden of proving that manifest injustice will result absent the amendment.  *Id.* at 1208; *Beene v. Ford Motor Co.*, 2011 U.S. Dist. LEXIS 18721, at *5-6 (D. Colo. Feb. 25, 2011).  The Tenth Circuit has explained that, when reviewing a decision by a district court to deny a request to amend a Final Pretrial Order, it will consider: "(i) the extent of prejudice or surprise to the nonmoving party if the amendment were permitted; (ii) the ability of that party to cure any prejudice; (iii) disruption to the litigation by inclusion of the new issue; and (iv) bad faith by the party seeking to modify the order."  *Koch*, 203 F.3d at 1222 & n.10.

## III.  ANALYSIS

Allstate moves to amend the Final Pretrial Order to include Mr. Garza and the evidence which arose out of his surveillance of Mr. Martin.  (ECF No. 236.)  Allstate also wishes to add as a defense: "Allstate is not at fault or liable to Plaintiff because fault for the insurance-bad-faith damages that Plaintiff seeks to recover on behalf of Sheri Lauk were caused by the fraudulent and/or misleading and malicious acts of Richard Kaudy, Scott Martin, and Elizabeth Martin."  (*Id*. at 2.)  The Court will address each of these requests in turn below.

**A.    Mr. Garza's Surveillance**

In arguing that it would be a manifest injustice to deny its proposed amendment of the Final Pretrial Order[1], Allstate argues that the evidence it seeks to introduce "powerfully supports" Allstate's defense in four ways: (1) it helps show that Kaudy and the Martins "fraudulently manufactured this bad-faith lawsuit" to recover more than the policy limit; (2) the fraud rule applies and furnishes Allstate with an additional defense; (3) the surveillance vindicates Allstate's position that it was being "set up", which rebuts Plaintiff's punitive damages theory; and (4) it undermines the credibility of Plaintiff's witnesses.  (ECF No. 206 at 2.)

With respect to Mr. Martin's credibility, the Court fails to see how evidence obtained four years after the trial shows that his prior trial testimony was perjured or that

---

[1] The parties' arguments on this issue are fleshed out in both the briefing on Plaintiff's Motion to Strike and Defendant's Motion to Amend.  Thus, the Court will refer to briefing for both Motions in the context of ruling on the Motion to Amend.

this lawsuit was "fraudulently manufactured."[2] As shown in Plaintiff's Reply to the Motion to Strike, there are legitimate medical reasons why Mr. Martin could do things in June 2013 that he could not do at the time of his trial testimony in 2009. (ECF No. 219.) The Court notes that Allstate had ample opportunity to litigate the extent and nature of Mr. Martin's injuries in the Underlying Action, but chose not to place him under surveillance or challenge his testimony as fraudulent *at that time.* In fact, Allstate's (or Ms. Lauk's) expert in the Underlying Action testified that Mr. Martin was not a liar, fake, fraud, or malingerer. (ECF No. 219 at 2-3.)

Allstate argues that it only recently obtained the surveillance footage and, therefore, it is timely and should not be precluded based on the fact that it was obtained over a year after discovery closed. (ECF No. 206 at 9-10.) The Court notes that Allstate disclosed the surveillance video and supporting materials to Plaintiff relatively quickly after they were obtained. However, the timing of the disclosure compared to the information being obtained is not the problem. Allstate has failed to offer any insight into why it waited until a year after discovery closed in this case to have Mr. Martin placed under surveillance. If, as it contends, it has long suspected that Mr. Martin's claim was fraudulent or, at the least, significantly inflated, the Court sees no reason why Allstate could not have placed Mr. Martin under surveillance at any point after the accident occurred. Certainly it would have been possible for Allstate to conduct such surveillance during the fourteen month discovery period in this case.

---

[2] Moreover, to the extent such evidence would be relevant to Mr. Martin's credibility, the factors discussed below such as the disruption to these proceedings and the prejudice to Plaintiff overwhelmingly outweigh any such relevance.

As Plaintiff points out, if the Court allows Mr. Garza to testify about his surveillance, it would cause significant prejudice to Plaintiff and a substantial delay of these proceedings. To cure the prejudice to Plaintiff, the Court would have to allow Plaintiff the time and opportunity to have the surveillance video reviewed by his own experts, and perhaps to acquire a new expert on this issue. Plaintiff could properly ask that he be allowed to call Mr. Martin's treating physicians as witnesses to offer their opinions on whether the new footage is consistent with their prior testimony, as well as how it pertains to Mr. Martin's prior testimony. Mr. Martin's treating physicians are not currently listed as witnesses, have not been deposed in this case, and have not reviewed any of the new information. All of this additional discovery would require that the trial of this matter be continued for a significant period of time.

Thus, the Court finds that the four *Koch* factors militate strongly against allowing the requested amendment. The Court finds that Mr. Garza's surveillance and his proposed testimony would significantly prejudice Plaintiff and that such prejudice could not be cured without substantially disrupting these proceedings. While there is no evidence of bad faith on the part of Allstate, the Court finds the timing of the surveillance questionable, especially given the lack of any evidence showing why such surveillance could not have been conducted earlier in this case.

As the Court has already held in this case, the appropriate time and place for Allstate to challenge the nature and extent of Mr. Martin's injuries was in the trial in which the key issue was the nature and extent of such injuries. (ECF No. 158 at 11.) The Court will not permit Allstate to amend the Final Pretrial Order to add a witness whose only purpose is to bring that issue into these proceedings.

Accordingly, Defendant's Motion to Amend is denied to the extent it seeks to amend the Final Pretrial Order to add Mr. Garza as a witness and his surveillance video and affidavit as exhibits. Moreover, because the Court declines to allow Allstate to amend the Final Pretrial Order, the Court finds that Plaintiff's request to strike all evidence pertaining to Mr. Garza's surveillance is moot, as such evidence will have no impact during the trial of this matter.

### B. Adding the Fraud Defense

Allstate also wishes to amend the Final Pretrial Order to add a new defense, that of fraud. (ECF No. 236 at 1-2.) The Tenth Circuit has held that "the pretrial order is the controlling document for trial." *Expertise Inc. v. Aetna Fin. Co.*, 810 F.2d 968, 973 (10th Cir. 1987). "[C]laims, issues, defenses, or theories of damages not included in the pretrial order are waived." *Wilson v. Muckala*, 303 F.3d 1207, 1215 (10th Cir. 2002). Modification of the final pretrial order is discouraged. *Koch v. Koch Indus.*, 179 F.R.D. 591, 596 (D. Kan. 1998) ("A policy of too-easy modification of pretrial orders not only encourages carelessness in the preparation and approval of the initial order, but unduly discounts it as the governing pattern at trial.") Courts routinely decline to permit a party to pursue a defense that is not listed in the final pretrial order. *See, e.g., Lohmann & Rauscher, Inc. v. YKK Inc.*, 477 F. Supp. 2d 1147, 1152 (D. Kan. 2007) (defendant was precluded from raising defense at trial that was not set forth in final pretrial order).

It is undisputed that the proposed fraud defense is not included in the June 12, 2012 Final Pretrial Order and that such failure to include the fraud defense was not the result of inadvertence or mistake. Rather, Allstate contends that it only recently

obtained Mr. Garza's surveillance evidence, which permits it to pursue this defense. (*Id*. at 9.) As discussed above, the Court is not persuaded by Allstate's argument regarding the timing of the surveillance evidence. There is absolutely no evidence as to why, if Allstate wanted to pursue a fraud defense, it could not have obtained the evidence necessary to support such defense earlier in this litigation. Because Allstate waited until the eve of trial to attempt to build a fraud defense and, as such, was unable to include it in the Final Pretrial Order, the Court finds that the fraud defense has been waived.

Additionally, even if the defense were not waived by the failure to include it in the Final Pretrial Order, the Court would not permit evidence on a fraud defense at trial. As Allstate argues, its primary evidence in support of a fraud defense is Mr. Garza's June 2013 surveillance. In the section above, the Court ruled that this evidence could not be offered at trial. As such, there appears to be little, if any, evidence supporting a fraud defense.

Accordingly, the Court denies Defendant's Motion to Amend to the extent it seeks to add a fraud defense.

## IV. CONCLUSION

For the reasons set forth below, the Court ORDERS as follows:

1. Defendant's Motion to Amend the Final Pretrial Order (ECF No. 236) is DENIED; and

2. Plaintiff's Motion to Strike Defendant's July 23, 2013 Fourteenth Supplemental Initial Disclosure (ECF No. 200) is DENIED as MOOT.

Dated this 19th day of August, 2013.

BY THE COURT:

_____
William J. Martinez
United States District Judge