IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 11-cv-00103-WJM-BNB

DENNIS W. KING, Colorado resident and U.S. Bankruptcy Trustee for bankrupt SHERI L. LAUK, a Colorado resident,

    Plaintiff,

v.

ALLSTATE INSURANCE COMPANY, a foreign corporation,

    Defendant.

## ORDER ON MOTIONS *IN LIMINE*

Before the Court are the following motions: (1) Plaintiff's Motion *in Limine* (ECF No. 202); and (2) Defendant's Motion *in Limine* (ECF No. 203). Each Motion has multiple subparts, which will be addressed in turn below.

### I. PLAINTIFF'S MOTION *IN LIMINE*

Plaintiff moves to exclude the following categories of evidence:

**A.   After Acquired Evidence**

Plaintiff moves to exclude various categories of evidence based on the fact that it was not part of the claim file during the relevant time period, *i.e.*, from August 24, 2008 through May 21, 2009.

The first category of evidence that Plaintiff moves to exclude on this basis is all the testimony from Defendant's experts Michael Zeeb, Dr. David Viano, and Dr. Richard Smith. (ECF No. 202 at 2.) However, these experts were the subject of prior Motions to Strike (ECF Nos. 186-88) which were granted by the Court (ECF No. 204) the day

after the Motion was filed. As the Court has already ruled that Defendant will not be permitted to offer evidence from Mr. Zeeb, Dr. Viano, or Dr. Smith, this aspect of the Motion is moot.

Plaintiff also moves to exclude evidence from Daniel Dote, an acquaintance of Scott Martin who apparently contacted Allstate at some point during the claims handling process and notified it that he believed Mr. Martin was inflating his claim. (ECF No. 202 at 4.) Plaintiff points out that Defendant does not list Daniel Dote as a proposed witness in this case and, therefore, Plaintiff will not be able to question Mr. Dote directly about his statements. (*Id.*) Plaintiff contends that any testimony about what Mr. Dote told Allstate would be hearsay. (*Id.*)

Allstate responds by arguing that Mr. Dote's statements that are recorded in the claims file would be non-hearsay, as they would fall under the business records exception. (ECF No. 217 at 2.) The Court agrees that the notes themselves could likely be business records, however, Mr. Dote's statements contained in those notes are an additional level of hearsay. *See* Fed. R. Evid. 801. Thus, to be admissible, Allstate needs to come forward with a hearsay exception that is applicable to that level of hearsay as well. It has not done so.

Additionally, to the extent that Mr. Dote's statements could be considered non-hearsay if not offered for the truth of the matter asserted (*e.g.,* to show Allstate's reaction to the information, or to show that Allstate had the information), the Court excludes the evidence under Rule 403. The relevant time period in this case was between August 24, 2008 (the date of the accident) and May 21, 2009 (the day Allstate offered policy limits to the Martins). Mr. Dote did not contact Allstate until October 7,

2

2009. (ECF No. 202 at 4.) As such, Mr. Dote's statements to Allstate regarding his belief that Mr. Martin was exaggerating his symptoms could not have been relevant to why Allstate declined to settle this case for policy limits before May 21, 2009.

The Court finds that it would be extremely and unfairly prejudicial to Plaintiff to permit Allstate to put on evidence that its failure to settle was motivated by Mr. Dote's statements regarding Mr. Martin's injuries. The Court finds that such evidence would be likely to confuse the jury about the issues in this case and would be a waste of time. As such, it is excluded pursuant to Rule 403 and Plantiff's Motion is granted as to any statement made by Daniel Dote.

Finally, Plaintiff moves to exclude any evidence from Robert Garza, an investigator hired by Allstate to conduct surveillance of Mr. Martin in June 2013. (ECF No. 202 at 5.) On August 19, 2013, the Court issued an Order denying Defendant's Motion to Amend the Final Pretrial Order to name Mr. Garza as a witness. (ECF No. 242.) As the Court has already ruled that Mr. Garza will not be allowed to testify at trial, Plaintiff's Motion is moot in this regard.

**B.      Attorney Richard Kaudy's State of Mind**

Plaintiff moves to exclude all evidence of attorney Richard Kaudy's state of mind. (ECF No. 202 at 6.) Plaintiff contends that Mr. Kaudy's motivations are irrelevant because Colorado does not recognize a defense that an insurance company was being "set up" for extra-contractual liability. (*Id.*)

Allstate alleges that Mr. Kaudy's state of mind is relevant to whether the Martins had any intent to settle their claims against Ms. Lauk, and that such intent goes to causation. (ECF No. 217 at 2-3.) The Court agrees. Plaintiff bears the burden of

3

establishing that all damages were caused by Allstate's bad faith decision not to settle the Martins' claims before May 21, 2009. Allstate has shown that the Martins were not permitted to settle their claim without the consent of Mr. Kaudy. (ECF No. 85-10 at 2.) Thus, Mr. Kaudy's state of mind is relevant to these proceedings.

Accordingly, Plaintiff's Motion is denied to the extent it seeks to exclude all evidence about Mr. Kaudy's state of mind.

C.  **Stephen Prater Being Insured by Allstate**

Plaintiff moves to exclude any mention of the fact that its bad faith expert, Stephen Prater, is insured by Allstate on the ground that it is irrelevant. (ECF No. 202 at 5.) Defendant contends that this fact is relevant to credibility and bias. (ECF No. 217 at 3.) The Court agrees with Defendant. The fact that Mr. Prater chooses to do business with Allstate as his insurance company is relevant to his credibility and bias as a witness. Thus, Plaintiff's Motion is denied to the extent it seeks to preclude evidence showing that Mr. Prater is insured by Allstate.

D.  **Testimony by the Lauk family**

Plaintiff moves to exclude all testimony from Sherri Lauk and her parents on the basis that it is not relevant. (ECF No. 202 at 6-7.) Ms. Lauk's bad faith claim for economic damages is part of the bankruptcy estate and is being pursued by the Plaintiff in this case, and she settled the claim for non-economic damages. As Ms. Lauk is not the real party in interest, Plaintiff contends that she and her parents have no role to play. (*Id.*)

Defendant contends that this testimony is relevant as it shows the interactions between the insurer and the insured during the relevant time period. (ECF No. 217 at 3.) Defendant also contends that it should be permitted to introduce evidence about how the insured (to whom it owed the duty of good faith and fair dealing) viewed its actions, and whether the insured wanted to settle the case. (*Id*.)

The Court agrees with Defendant. An insurance company is permitted to consider the opinions of the insured in deciding whether to settle. *See Bankr. Estate of Morris v. COPIC Ins. Co.*, 192 P.3d 519, 525-26 (Colo. App. 2008). Therefore, Defendant is permitted to elicit testimony about whether and to what extent Ms. Lauk was interested in settling the Martins' claims against her. Additionally, the Lauks' testimony provides necessary context for the case in that Sherri Lauk was the insured during the relevant time period.

The Court agrees with Plaintiff that the Lauks are not insurance experts and that any attempts to elicit testimony from them about what a reasonable insurer would have done would be improper. Should Defendant ask such questions at trial, Plaintiff is free to object and the Court will make the appropriate ruling at that time.

Accordingly, Plaintiff's Motion is denied to the extent it seeks to preclude all testimony from Sherri Lauk and her parents.

**E.    "Litigation funding" Loans**

Scott Miller obtained loans that allowed him to meet his basic needs while pursuing the underlying litigation. The loan documents state that they are for the purposes of "affording" Mr. Martin "sufficient funds to proceed with the Litigation". (ECF

No. 217 at 4.)

Plaintiff moves to prevent Defendant from referring to the loans as "litigation funding" loans because they did not go to fund any aspect of the actual litigation. (ECF No. 202 at 7-8.) Defendant contends that "litigation funding" loans is not a mischaracterization based on the actual loan documents. (ECF No. 217 at 4.)

The Court finds that referring to the loans received by the Martins as "litigation funding loans" is not unfairly prejudicial to Plaintiff. The parties are free to elicit testimony about the nature of these loans, why the Martins felt they needed to obtain the loans, and the ultimate use of the funds received. The jury will then be able to draw its own conclusions based on the evidence.

Accordingly, Plaintiff's Motion is denied to the extent it seeks to preclude Defendant from referring to the loans the Martins obtained during the underlying litigation as "litigation funding loans".

## F.  Evidence About Punishing Karla Cosgrove

Plaintiff moves to exclude any reference to this suit being brought to punish Karla Cosgrove, who was Allstate's adjuster on this case. (ECF No. 202 at 8.) Plaintiff points out that Ms. Cosgrove will not personally liable for any judgment, so there is no punishment to her. (*Id.*) Defendant contends that, although Ms. Cosgrove will not be liable on any judgment, any punitive damage award is intended to punish Allstate for Ms. Cosgrove's conduct. (ECF No. 217 at 4.) Defendant argues that it should be permitted to argue that Ms. Cosgrove did nothing worth punishing and, therefore, punitive damages are not appropriate. (*Id.*)

Having presided over a number of trials and having seen how seriously the jurors take their obligations, the Court is confident that the jury is capable of understanding the difference between an individual's personal liability on a judgment and the concept of awarding damages against a company based on the actions of its employees. The Court agrees that, if the jury decides to award punitive damages, it is in essence punishing Allstate for the actions and decisions of its employees, primarily Karla Cosgrove. Thus, any potential statement about Ms. Cosgrove's actions not being worthy of punishment does not mischaracterize the situation and is not unfairly prejudicial. Therefore, the Court will not preclude Defendant from making such references.

However, Defendant may not mislead the jury by attempting to make it appear that Karla Cosgrove is personally liable for any judgment in this case. Any effort to confuse the jury in such a manner will not be tolerated by the Court.

Accordingly, Plaintiff's Motion is denied to the extent it seeks to preclude any reference to statements referring to "punishment" in the context of Ms. Cosgrove and her actions. However, Defendant is cautioned not to push the limits with this phrasing.

**G.    Trustee's fee agreement**

Plaintiff moves to exclude as irrelevant any reference to the Trustee's fee agreement with his counsel. (ECF No. 202 at 8-9.) Defendant contends that the various fee agreements are relevant because Mr. Kaudy will be paid from Plaintiff's counsel's share of any verdict in this case. (ECF No. 217 at 4.)

Mr. Kaudy's testimony in his deposition shows that he believes there is a possibility that he may recover some money for costs and/or fees if the Plaintiff prevails

7

in this case. (ECF No. 90 at 4-5.) The Court agrees with Defendant that, to whatever extent Mr. Kaudy may have (or may believe he has) some financial stake in the outcome of this trial, it is relevant to his bias. However, the Court does not see how any other aspect of a the trustee's fee agreement is relevant. Therefore, Plaintiff's Motion is denied to the extent it seeks to preclude any mention of Mr. Kaudy's financial interest in this trial but granted in all other respects.

## II. DEFENDANT'S MOTION *IN LIMINE*

Defendant moves to exclude the following four categories of evidence:

### A. Evidence of Mr. Kaudy's state of mind

Defendant moves to exclude two exhibits which it believes Mr. Kaudy will utilize to testify about why he took certain actions. (ECF No. 203 at 1-2.) Defendant contends that this is impermissible state of mind evidence. (*Id.*)

Defendant has made clear that it intends to make Mr. Kaudy's motivations a central issue in this case and will present evidence, including expert testimony, about why Mr. Kaudy may have made certain tactical decisions. (*See* ECF No. 192 at 7-12.) This being the case, it makes no sense that Mr. Kaudy would not be able to offer his own testimony about his motivations, and also refer to evidence that forms the basis for his relevant beliefs.

To the extent that there may be evidentiary objections to the evidence proffered (*e.g.*, hearsay, authenticity), the Court will rule on those issues during trial. Additionally, to the extent Defendant is seeking to preclude Mr. Kaudy's "unhinged, anti-Allstate rants shared at his deposition", the Court is confident that Mr. Kaudy will comport

himself professionally during his trial testimony. Should his testimony start to cross the line into inflammatory and unfairly disparaging commentary, Defendant may make the appropriate objection and the Court will handle that during trial.

Accordingly, Defendant's Motion is denied to the extent it seeks to exclude evidence about Mr. Kaudy's state of mind. The Court will rule on the admissibility of any exhibit utilized by Mr. Kaudy during his testimony at the relevant point during trial.

### B. Loss Reserve Information

Defendant moves to exclude any reference to loss reserve information. (ECF No. 203 at 4-5.) However, in its Order on the parties' expert motions, the Court held that loss reserve evidence was relevant to show Allstate's knowledge about potential liability on the claim. (ECF No. 203 at 13.) As is apparent from the expert motions, the parties will offer competing expert testimony on the role of loss reserves and, to the extent necessary, the Court can instruct the jury on the governing law.

Accordingly, Defendant's Motion is denied to the extent it seeks to preclude all evidence on loss reserves.

### C. Settlement Agreement between Lauk & Allstate

Ms. Lauk exempted her claims for emotional distress and non-economic damages from her bankruptcy estate and subsequently settled those claims for $10,000. (ECF No. 203 at 5-6.) Defendant moves to exclude any reference to this settlement based on Rule 408 and argues that Plaintiff is attempting to use the settlement to show that Allstate has admitted liability. (*Id.*) Plaintiff argues that the settlement is admissible to show bias and is relevant to the jury's assessment of Ms.

Lauk's credibility. (ECF No. 216 at 3.)

The Federal Rules of Evidence plainly prohibit the use of any settlement agreement to show an admission of liability. *See* Fed. R. Evid. 408 (a settlement is not admissible "either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction"). However, the Court may admit evidence of a settlement "for another purpose, such as proving a witness's bias or prejudice". *Id.*

The Court agrees with Plaintiff that the Lauks' settlement with Allstate may have some relevance to bias. However, as the settlement has been paid and there is no evidence of continuing obligation on the part of the Lauks to Allstate, any such relevance is minimal. Additionally, there is a significant possibility that the jury may misuse any evidence of a settlement to conclude that Allstate has accepted fault for Ms. Lauk's injuries, which is the precise reason for Rule 408. The Court finds that the potential for unfair prejudice to Allstate greatly outweighs the minimal relevance of the settlement and, therefore, the evidence should be excluded under Rule 403. *See Bradbury v. Phillips Petroleum Co.*, 815 F.2d 1356, 1364 (10th Cir. 1987) (when the admissibility of a settlement is "doubtful", "the better practice is to exclude evidence of compromises or compromise offers.").

Accordingly, Defendant's Motion is granted to the extent it seeks to preclude any evidence of the settlement between the Lauks and Allstate.

D.  **Comfort Letter Testimony**

At his deposition, Mr. Kaudy testified that Allstate could have or should have

offered a "comfort letter" to Ms. Lauk. A "comfort letter" is given to an insured by his or her insurer in advance of trial. In a "comfort letter", the insurer typically waives the policy limit and agrees to pay the full amount of any excess judgment. Plaintiff's expert also apparently testified about "comfort letters" and their use in the insurance industry.

Defendant moves to exclude any testimony of this sort because there is no requirement that an insurance company offer a "comfort letter" to its insured. (ECF No. 203 at 6-7.) Plaintiff contends that it intends to offer testimony about the use of comfort letters in general, not as a matter of Colorado law, but as an industry practice. (ECF No. 216 at 3-4.) Plaintiff argues that evidence that reasonable insurers offer comfort letters to insureds when they choose to dispute a clear liability claim shows that Allstate did not act reasonably in this case. (*Id*.)

Plaintiff has cited no authority requiring the offer of a "comfort letter" under Colorado law. The Court will not permit Plaintiff to enumerate a list of things Allstate hypothetically "could have" or "should have" done. The Court finds that allowing evidence of the possibility of a "comfort letter" would unfairly prejudice Allstate, could confuse the jury as to the relevant issues in this case, and would be a waste of time. Accordingly, pursuant to Rule 403, the Court finds that evidence that Allstate could have offered Ms. Lauk a "comfort letter" is inadmissible and Defendant's Motion is granted in this respect.

### III. CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1.  Plaintiff's Motion *in Limine* (ECF No. 202) is GRANTED IN PART and DENIED IN PART as set forth above; and

2.      Defendant's Motion *in Limine* (ECF No. 203) is GRANTED IN PART and DENIED IN PART as set forth above.

Dated this 20th day of August, 2013.

BY THE COURT:

_____
William J. Martinez
United States District Judge